IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MAIKIJAH A. HAKEEM,<br><br>  Plaintiff,<br><br>  v.<br><br>KANSAS DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT ENFORCEMENT DIVISION, and JODI HOWARD, in her individual and official capacities as Commissioner of Kansas Department of Human Services,<br><br>  Defendants. | Case No. 21-2417-JAR-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Maikijah A. Hakeem, proceeding *pro se* and *in forma pauperis* ("IFP"), has filed a Complaint alleging that Defendants—the "Kansas Department of Human Services, Child Support Enforcement Division," and its "Commissioner," "Jodi Howard"—unlawfully intercepted his economic impact payment issued under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020[1] to satisfy his past-due child support obligations.[2] On February 2, 2022, this Court issued a Show Cause Order to Plaintiff that notified him the IFP Complaint is subject to mandatory screening under 28 U.S.C. § 1915(e)(2).[3] The Court noted that Plaintiff had named as Defendants a Kansas agency and commissioner that do not exist.[4] The Court then found that, even liberally construing his Complaint as naming the Kansas

---

[1] Pub. L. 116-136, 134 Stat. 281.

[2] Doc. 1 at 2.

[3] Doc. 11.

[4] *Id.* at 3.

Department for Children and Families ("DCF") and its Secretary, Laura Howard, as Defendants, the Complaint failed to state a plausible claim for relief because the CARES Act authorizes offsets of economic impact payments for past-due child support obligations.[5] The Court therefore directed Plaintiff to show cause why this action should not be dismissed under § 1915(e)(2).[6] Plaintiff timely responded to the Court's Show Cause Order.[7] In his response, Plaintiff clarifies that he intended to sue DCF and Secretary Howard, and requests permission to file a motion under Fed. R. Civ. P. 15 seeking leave to amend to name the correct Defendants.[8] Plaintiff also argues that his Complaint should survive § 1915(e)(2) screening.[9] Having carefully reviewed Plaintiff's response, the Court finds that it must dismiss this action under § 1915(e)(2) without leave to amend.

## I.   Standard

Under § 1915(e)(2), the Court is required to dismiss an IFP action "at any time" if it determines that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted."[10] To determine whether a complaint states a claim, the Court applies the same standard used in resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[11] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the

---

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] Doc. 14.

[8] *Id.* at 7.

[9] *See id.* at 7–10.

[10] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

[11] *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[14]  Because Plaintiff proceeds *pro se*, the Court construes his Complaint liberally.[15]  But the Court does not assume the role of Plaintiff's advocate, and he still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based."[16]

## II.   Factual Background

Plaintiff is "involuntar[il]y hospitalized under a District Court Order as a mental patient at the Minnesota Sex Offender Program."[17]  The Complaint alleges that Defendants "illegally seized" Plaintiff's economic impact payment of $1,813.36 made under the CARES Act, and "unlawfully applied" it to his past-due child support obligations.[18]  Plaintiff contends this violated the CARES Act because the Act provides that economic impact payments cannot be offset against certain types of debts identified in § 2201(d)(1) to (d)(3).[19]

Plaintiff asserts two counts against Defendants: (1) "unauthorized interception of [economic impact payment] in violation of the CARES Act"; and (2) "breach of the secuirty [sic] in violation of the CARES Act."[20]  Plaintiff says he is "not seeking a tax refund,"[21] but asserts

---

[13] *Id.*

[14] *Id.*

[15] *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

[16] *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[17] Doc. 1 at 4.

[18] *Id.* at 2.

[19] *Id.*

[20] *Id.* at 7–11.

[21] *Id.* at 6.

3

that Defendants "are mandated to return the intercepted amount."[22]  In his request for relief, he seeks damages.[23]

### III.  Discussion

#### A.  Economic Impact Payment Offset

In the early days of the COVID-19 pandemic, the CARES Act provided economic impact payments of up to $1,200 per adult for eligible individuals and $500 per qualifying child.[24] Plaintiff argues that his Complaint should survive screening under § 1915(e)(2) because the CARES Act "expressly provides that the 'economic impact payment' . . . cannot be offset against the kinds of debts expressly identified in Section 2201(d) and (d)(3) of the Act," yet his payment was intercepted to satisfy his past-due child support obligations.[25]  Plaintiff is right that the CARES Act prohibits economic impact payments from being offset to satisfy certain debts, but as the Court explained in its Show Cause Order, past-due child support is not one of them.[26] Based on the facts alleged in the Complaint, Plaintiff's economic impact payment under the CARES Act was properly offset because he owed past-due child support.  Thus, Plaintiff fails state a claim on which relief may be granted, and the Court must dismiss his Complaint under § 1915(e)(2).

But, Plaintiff's response to the Court's Show Cause Order adds a new wrinkle.  Plaintiff claims in his response that $1,200 of the funds seized by Defendants was actually "a payment

---

[22] *Id.* at 9.

[23] *See id.* at 11–12.

[24] *See* CARES Act, Pub. L. 116-136, § 2201, 134 Stat. 281, 335 (2020) (codified at 26 U.S.C. § 6428).

[25] Doc. 14 at 7.

[26] *See* CARES Act § 2201(d), 134 Stat. at 338–39; *see also Frequently Asked Questions*, Bureau of the Fiscal Serv., https://fiscal.treasury.gov/top/faqs-for-the-public-covid-19.html (last updated July 9, 2021) ("The Economic Impact Payment under the CARES Act can be offset through [the Treasury Offset Program] only to collect delinquent child support obligations . . . .").

4

under the [Consolidated Appropriations Act of 2021 ("CAA")]"[27]—something he does not allege in the Complaint. The CAA provided the second round of economic impact payments: $600 per adult for eligible individuals, plus $600 per qualifying child.[28] Plaintiff points out that "Subsection [272(d) of Title II of division N of the CAA], which at this time has not been codified into the United States Code, further specifies that 'no applicable payment shall be subject to, execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law.'"[29] Payments made "electronically by direct deposit through the Automated Clearing House (ACH) network" must be issued "using a unique identifier that is reasonably sufficient to allow a financial institution to identify the payment as an applicable payment."[30] If the applicable payment lacks a unique identifier, the financial institution must, "upon the request of the account holder," treat the funds "as exempt from a garnishment order."[31]

Plaintiff argues that his economic impact payment was "improperly seized on a technicality"—"his payment arrived as a federal tax refund rather than as an encoded economic impact payment."[32] Plaintiff asserts "Defendants acted in three capacities simultaneously: (1) the financial institution obligated to treat Plaintiff's funds as exempt under Title II; (2) a creditor to whom Plaintiff owed debts; and (3) the State agency capable of directing a garnishment of Plaintiff's funds to pay the creditor."[33] But, Plaintiff continues, "Title II provides a secondary method for protecting relevant payments from garnishment. In short, Title II arguably mandated

---

[27] Doc. 14 at 9; *see* 26 U.S.C. § 6428A(a); Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, § 272, 134 Stat. 1182, 1965 (2020).

[28] 26 U.S.C. § 6428A(a).

[29] Doc. 14 at 8 (quoting CAA § 272(d)(2)(A), 134 Stat. at 1972).

[30] CAA § 272(d)(2)(B), 134 Stat. at 1972.

[31] *Id.* § 272(d)(2)(C)(ii), 134 Stat. at 1972.

[32] Doc. 14 at 9.

[33] *Id.*

5

[that] Defendants—officers at the financial institution [i.e., DCF]—treat Plaintiff's § 1,200 [economic impact payment] as exempt from garnishment. Plaintiff alleges that they did not."[34] Plaintiff also asserts that "[a]lthough a safe harbor provision of Title II exists, [his] allegations suggest Defendants do not qualify."[35]

Although he does not cite the case, Plaintiff appears to have taken most of this language from *Beal v. Davids*,[36] a district court decision out of the Western District of Michigan. There, a plaintiff incarcerated with the Michigan Department of Corrections ("MDOC") at the Ionia Correctional Facility alleged that the MDOC improperly seized his $600 economic impact payment issued under the CAA from his prisoner trust account to pay his debts.[37] Although "Title II does not define the term," the court "presume[d] that the MDOC operates as a financial institution under Title II" because it "administers the trust accounts of the prisoners in its custody," "accepts the relevant payments from the federal government," and "appears capable both of effectuating garnishment orders and of notating exempt payments."[38] The court then found that the plaintiff had stated a plausible claim for relief against the warden and three other employees of his facility:

> Plaintiff's complaint and attachments suggest that Defendants seized on a technicality—that his payment arrived as a federal tax refund rather than as an encoded economic impact payment. Yet, the Defendants appeared to act in three capacities simultaneously: the financial institution obligated to treat Plaintiff's funds as exempt under Title II, a creditor to whom Plaintiff owed debts, and the State agency capable of directing a garnishment of Plaintiff's funds to pay the creditor. That conflict could plausibly give Defendants a reason to justify seizing Plaintiff's funds to pay

---

[34] *Id.*

[35] *Id.* at 10.

[36] No. 1:21-CV-522, 2021 WL 2934835 (W.D. Mich. July 13, 2021).

[37] *See id.*

[38] *Id.* at *5.

> his debts. However, Title II provides a secondary method for
> protecting relevant payments from garnishment. Plaintiff appears
> to have employed that secondary method when he sent his kite on
> May 3, 2021[, in which he requested that the Ionia Correctional
> Facility and the MDOC treat his $600 payment issued under the
> CAA as exempt from garnishment].
>     In short, Title II arguably mandated that Defendants—
> corrections officers at the financial institution holding Plaintiff's
> funds—treat $600 of Plaintiff's funds as exempt from garnishment.
> Plaintiff alleges that they did not. Although a safe harbor
> provision of Title II, exists, Plaintiff's allegations suggest that
> Defendants do not qualify. Thus, Plaintiff has alleged facts
> sufficient to state a claim under Title II, Section 272.[39]

Here, even if Plaintiff had alleged in his Complaint the new facts contained in his response, he still would fail state a plausible claim for relief. DCF is not a financial institution. And Plaintiff, who is "civilly committed in the State of Minnesota,"[40] does not explain how the agency could possibly have acted as the "financial institution" that held his funds and failed to honor his request to treat his CAA economic impact payment as exempt from garnishment, like the MDOC appeared to in *Beal*. Plaintiff's conclusory statement that Defendants "acted" as "the financial institution obligated to treat [his] funds as exempt under Title II" is not enough to make it so.

### B.  Sovereign Immunity

Moreover, Plaintiff's claims are barred by sovereign immunity. First, Plaintiff seeks to bring claims against DCF, a state agency. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[41] The principle of sovereign immunity, which is confirmed by the Eleventh Amendment, provides that states and state agencies are generally immune from

---

[39] *Id.* at *5–6 (citation omitted).

[40] Doc. 1 at 2.

[41] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

suit.[42]  When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[43]  Thus, "[t]he Eleventh Amendment has been interpreted to bar suits against states and state agencies for money damages in federal court."[44]  Sovereign immunity does not apply when a state waives its immunity, and in some circumstances Congress may abrogate states' sovereign immunity by appropriate legislation.[45]  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."[46]  A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."[47]  Similarly, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'"[48]

Here, there has been no waiver or valid abrogation of sovereign immunity.  Plaintiff asserts that "Congress waived sovereign immunity under the Administrative Procedures Act (APA),"[49] relying on *Scholl v. Mnuchin*,[50] where plaintiffs challenged the Internal Revenue Service's policy of withholding economic impact payments from incarcerated persons and sought declaratory and injunctive relief.  But here, Plaintiff brings claims for damages against

---

[42] *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

[43] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[44] *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (citations omitted).

[45] *Va. Off. for Prot. & Advoc.*, 563 U.S. at 253–54 (citations omitted).

[46] *Id.* at 254.

[47] *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

[48] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991)).

[49] Doc. 1 at 6; *see* 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.").

[50] 494 F. Supp. 3d 661 (N.D. Cal. 2020).

state defendants.  This is not an APA suit, and the APA does not apply.  The Court finds that DCF is immune from suit.

Second, Plaintiff seeks to bring claims against Secretary Howard.  But there are no specific factual allegations asserting that she personally participated in the conduct giving rise to Plaintiff's claims.  And Plaintiff's claims against Howard in her official capacity are also barred by the doctrine of sovereign immunity because this immunity extends to "suits for damages and other forms of relief against state defendants acting in their official capacities."[51]

The only potentially applicable exception to sovereign immunity in this case is described in *Ex parte Young*, which allows suits for prospective injunctive relief for continuing violations of federal law.[52]  To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[53]  Although Plaintiff alleges generally that Defendants violated the CARES Act "while implementing, retaining[,] and carrying out practices and policies that violate the CARES Act,"[54] he does not identify ongoing violations of federal law; he identifies a prior, discrete incident of alleged wrongdoing without any reference to continuing violations.  And tellingly, Plaintiff does not request injunctive relief.  Instead, Plaintiff asserts in his Complaint that Defendants must "return the intercepted amount,"

---

[51] *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (citing *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002)).

[52] 209 U.S. 123 (1908).

[53] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[54] Doc. 1 at 3.

and he requests damages. Such relief is not prospective.[55] Thus, the *Ex Parte Young* exception to sovereign immunity does not apply. Plaintiff's claims are barred by sovereign immunity.

### C.    Leave to Amend

"[A] *pro se* litigant bringing suit *in forma pauperis* is entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect."[56] Leave need not be granted if amendment would be futile.[57] But if the *pro se* plaintiff's factual allegations are close to stating a claim but are missing some important element, the Court should allow leave to amend.[58] Granting leave to amend in this case would be futile. For the reasons set forth above, Plaintiff has not alleged facts that come close to stating a claim on which relief may be granted. Accordingly, Plaintiff's claims must be dismissed in their entirety without leave to amend.

**IT IS THEREFORE ORDERED BY THE COURT** that this case is **dismissed** in its entirety under 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted, without leave to amend.

**IT IS SO ORDERED.**

Dated: July 7, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[55] *See Edelman v. Jordan*, 415 U.S. 651, 667, 668 (1974).

[56] *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

[57] *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

[58] *Id.* (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).